John E. LEMONS, Jr., Plaintiff,

v.

Ramona K. LEWIS, Defendant.

Civil Action No. 95–2507–EEO.

United States District Court,
D. Kansas.

June 16, 1997.

John E. Lemons, Kansas City, KS, pro se.

Dale H. Close, Kansas City Police Dept., Legal Advisor's Office, Kansas City, MO, Lisa S. Morris, Kansas City Police Dept., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on the supplemental motion of defendant Ramona K. Lewis for summary judgment (Doc. # 73), and the motion of plaintiff John E. Lemons, Jr., to declare an attorney mentally incompetent or incapacitated pursuant to Local Rule 83.6.9(b) (Doc. # 78). Both motions are ready for ruling. For the reasons stated below, defendant's motion for summary judgment is granted, and plaintiff's motion is denied.

### I. Defendant's Motion for Summary Judgment (Doc. # 73).

#### A. Standards for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dis-

pute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

**B.  *Standards for a Pro Se Litigant.***

█ It is well settled that a federal court will construe liberally a pro se litigant's pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir.1995); *Haskell v. United States Dep't of Agric.,* 743 F.Supp. 765, 767 n. 1 (D.Kan.1990), *aff'd,* 930 F.2d 816 (10th Cir.1991). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988).

Nevertheless, pro se status does not absolve a litigant's duty to comply with fundamental procedural rules. *Ogden v. San Juan County,* 32 F.3d 452, 455 (1994), cert. *denied,* 513 U.S. 1090, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995). *See also Milton v. Sully,* Civ. A. No. 92–2178–O, 1993 WL 141855, *1 (D.Kan. April 14, 1993) ("Although plaintiff as a pro se litigant is afforded some latitude in the construction of his pleadings, *see, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), he is still obligated to follow the same rules of procedure as any other litigant, *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992)."). *See also Cooper v. Davies,* 35 F.3d 574, 1994 WL 454532, *1 (10th Cir.1994) ("The relaxed treatment to which pro se cases are entitled does not excuse the requirement for production of evidence."); *Gorsline v. United States Dep't of Defense,* 45 F.3d 439, 1994 WL 722943, *3 n. 4 (10th Cir.1994) ("The latitude given for a litigant's pro se status does not require the court to formulate arguments or evidence."); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (It is not the court's function to become an advocate for the pro se litigant).

## C. *Factual Background*

The material uncontroverted facts established in accordance with Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1 are as follows:

At all times material to this action, defendant Ramona K. Lewis was a police officer with the Kansas City, Missouri, Police Department, and a resident of the state of Missouri. On March 21, 1993, Lewis was working as a Detective in the Robbery Unit. That afternoon, two police officers contacted the Robbery Unit from the scene of a robbery at a Taco Bell restaurant in Clay County, Missouri. Two detectives, Detective Jeff Reed and Detective T.R. Davis, were sent to the Taco Bell to begin their initial investigation of the crime.

Officer Carrel, a police officer at the scene, obtained a description of the robber from employees at the Taco Bell. The employees described the suspect as a black male, approximately five feet, eight inches tall to five feet, nine inches tall, wearing a long, knee-length black trenchcoat and black trousers. The officer relayed this information to the police dispatcher, who broadcast the description over the police radio system. Officer Carrel interviewed the manager of the Taco Bell, who described the suspect as a black male, approximately seventeen to twenty years old, six feet tall, one-hundred fifty pounds, skinny build, and wearing a black hat, coat, and pants. A group of witnesses in the restaurant described the robber as a black male in his early twenties wearing a navy trenchcoat, black cap, black hose over his face, and jeans. The officers at the scene listed the names of each witness to the crime in their police reports, which were forwarded to the Robbery Unit case file. Detective Lewis was not at the scene on the day of the robbery, and only began work on the Taco Bell robbery after Detective Reed was transferred to another job within the police department.

On March 24, 1993, the TIPS Hotline received a phone call regarding the robbery of the Taco Bell. The caller identified the robber as a man who lived with a woman named Christine Mudd. Detectives interviewed Mudd; she told them that she had lived with a man named John Lemons, a black male.

Detective Reed showed a photographic spread, consisting of five black and white photos of black males, to two witnesses to the robbery. One witness identified the photo of plaintiff as the robber she saw fleeing the Taco Bell. The other witness identified the photo of plaintiff as being most similar to the robbery suspect. After being shown a photograph of plaintiff's profile, that witness identified plaintiff as the robber he saw fleeing the Taco Bell.

On April 29, 1993, Detective Reed issued a "pickup" order, requesting that the plaintiff be arrested for armed robbery based on the identification of the plaintiff by two witnesses to the robbery. Detective Lewis had no involvement with any of the photographic lineups, or with issuing the pickup order for the arrest of plaintiff. On May 23, 1993, Detective Reed was transferred out of the Robbery Unit, and on July 1, 1993, Detective Lewis took over the investigation of the robbery.

On July 1, 1993, plaintiff was arrested by police officer Wolz at plaintiff's residence. Detective Lewis was not at the scene of the arrest, nor did she have any personal involvement with plaintiff's arrest on that date. Plaintiff was brought to the Kansas City, Missouri, Police Headquarters, and booked on a charge of investigation of robbery. Later that day, Detective Lewis and Detective Scott Caron conducted a videotaped lineup in the lineup room at police headquarters. The lineup consisted of plaintiff, and two other African–American males. These two males were the only African–American males in custody that day who closely resembled the physical characteristics of plaintiff.

On July 1, 1993, after the lineup was conducted, Detective Lewis escorted plaintiff to the Robbery Unit, and gave plaintiff a copy of a written *Miranda* waiver. Plaintiff read the waiver out loud in the presence of Lewis. When Lewis asked plaintiff if he understood the waiver, he indicated that he did. Detective Lewis then asked plaintiff to sign the waiver. Plaintiff refused to sign the waiver, stating that he had not done anything, but

that he knew about the police department's tricks and wanted to talk to a lawyer.

At that time, Lewis did not ask plaintiff any other questions, and plaintiff was immediately returned to the Detention Unit. Plaintiff was thereupon released, pending further investigation of the crime. No formal statement of the plaintiff was used or introduced as evidence at plaintiff's criminal trial, except for the comments he made concerning the written *Miranda* waiver.

On July 21, 1993, another witness to the robbery, an employee of the Taco Bell, viewed the videotaped lineup. The witness positively identified the plaintiff as the perpetrator of the March 21, 1993, robbery. On July 26, 1993, based on this third eyewitness identification, Lewis forwarded the case file to the Clay County Prosecutor's Office. On August 4, 1993, an associate circuit judge of Clay County, Missouri, issued a robbery warrant for plaintiff's arrest.

On August 11, 1993, Kansas City, Missouri, Police Officer David Schroeder arrested plaintiff at plaintiff's residence in Kansas City, Missouri, on the outstanding warrant for his arrest. Schroeder transported plaintiff to police headquarters for booking. Detective Lewis did not arrest plaintiff, and had no personal contact with plaintiff either on the day of his second arrest, or at any time thereafter. On September 15, 1993, plaintiff was indicted by a grand jury in Clay County, Missouri, on charges of armed robbery and armed criminal action.

As part of the investigation, Lewis interviewed twenty-one witnesses to the crime, and attempted to locate four others. Lewis also requested a comparison of the fingerprints found at the crime scene with the fingerprints of plaintiff, which were already on file at the Kansas City, Missouri, Police Department. The Latent Print Examiner for the Kansas City, Missouri, Police Department subsequently informed Lewis that the fingerprints found at the crime scene were not of sufficient quality to make any comparison.

Plaintiff's criminal trial began on December 6, 1993. On December 8, 1993, the jury

announced to the court that it was unable to reach a verdict, and the court declared a mistrial.

Plaintiff's original complaint named as additional defendants Detective Jeff Reed and the Kansas City, Missouri, Board of Police Commissioners. On April 1, 1996, this court dismissed the Kansas City, Missouri, Board of Police Commissioners as a defendant, on the grounds that the Board is not a suable entity. On November 22, 1996, the court dismissed Detective Reed as a defendant from this action, due to plaintiff's failure to obtain service of process. Consequently, defendant Ramona K. Lewis is the sole remaining defendant in this lawsuit.

On April 22, 1997, this court granted defendant Lewis' motion for summary judgment, but noted that "defendant did not move for summary judgment as to plaintiff's claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution, and his claim under 42 U.S.C. § 1985." The court granted defendant leave to file a motion for summary judgment with respect to these remaining claims, and such motion is now presently before the court.

### D. *Discussion.*

#### 1. *§ 1983 Claim for False Arrest.*

In his complaint, plaintiff states: "This is a Civil Rights violation. (False Arrest) ." Plaintiff's Complaint at 3. Plaintiff further states: "On 3–21–93 [1] the Det[ective] arrested me for a crime I did not commit. At Taco Bell; . . . ." Plaintiff's Complaint at 4. In the Pretrial Order, plaintiff alleges: " . . . John should not have been arrested from the beginning." Pretrial Order at 3. Viewed liberally, such allegations appear to allege a civil rights claim under section 1983 for false arrest.

Section 1983 imposes liability for conduct carried out under the color of state law which deprives a plaintiff of "rights, privileges, or immunities secured by the Constitution and laws . . ." 42 U.S.C. § 1983. To prevail on a claim for damages for a constitutional violation pursuant to section 1983, a

---

1. The evidence reflects that plaintiff's initial arrest occurred on July 1, 1993.

plaintiff must establish that a defendant acted under color of state law and caused or contributed to the alleged violation. *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996). In certain circumstances, a false arrest may constitute not only an action under state law, but a violation of civil rights pursuant to 42 U.S.C. § 1983, as well. *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir.1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); *Mason v. Stock,* 955 F.Supp. 1293 (D.Kan.1997).

▮ To the extent plaintiff is attempting to assert a section 1983 claim against officer Lewis for plaintiff's initial arrest on July 1, 1993, summary judgment must be granted in favor of defendant. The initial arrest of plaintiff was conducted by Detective Reed, not Detective Lewis. Detective Reed is no longer a party to this case. According to Detective Lewis' affidavit:

> On April 29, 1993, then Detective Jeff Reed put out a pick-up order requesting that the Plaintiff be arrested for armed robbery based on the identification of the Plaintiff by two separate witnesses to the robbery. The Affiant [Lewis] had no involvement with any of the photographic line-ups prepared or shown to witnesses in the case or with issuing the pick-up for the arrest of the Plaintiff.

> On May 23, 1993, ... Reed was transferred from the Robbery Unit to the Metro Property Crimes Unit. The Affiant took over the investigation into the robbery of the Taco Bell on July 1, 1993.

> On July 1, 1993 ... the Plaintiff was arrested by Police Officer Wolz of the Kansas City, Missouri Police Department. The Affiant was not at the scene of the arrest nor did she have any personal involvement in the Plaintiff's arrest on that date.

Defendant's Exhibit A to Original Motion for Summary Judgment, ¶¶ 21–25. Plaintiff has presented no evidence to controvert Lewis' assertion that she did not participate in any way in plaintiff's initial arrest. Consequently, plaintiff has not established that Lewis *acted* under color of state law, and *caused* or *contributed* to the alleged violation, *see Jenkins,* 81 F.3d at 994. Therefore, Lewis is entitled to summary judgment on any claim of false arrest regarding plaintiff's initial arrest.

▮ With respect to the second arrest, it appears plaintiff bases his false arrest claim on the grounds that plaintiff did not commit the offense. "The proper inquiry in a § 1983 claim based on false arrest is *not* whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had." *Crawford v. City of Kansas City, Kansas,* 952 F.Supp. 1467, 1474 (D.Kan.1997) (citing *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir.1988)) (emphasis added). *See also Karr v. Smith,* 774 F.2d 1029, 1031 (10th Cir.1985) (absence of probable cause is an essential element of plaintiff's § 1983 claim for unlawful arrest); *Elbrader v. Blevins,* 757 F.Supp. 1174, 1178 (D.Kan. 1991) (same).

In plaintiff's response, he makes the bald assertion that "there was not probable cause for plaintiff to be arrested in the beginning." The uncontroverted evidence indicates that on July 26, 1993, Lewis sent defendant's case file to the Clay County Prosecutor's office. Her decision to send the file to the prosecutor's office was based on three positive identifications of plaintiff by eye-witnesses to the robbery. While plaintiff attempts to raise fact questions regarding the accuracy of the eye-witness identifications, he has failed to comply with the specific requirements of our Local Rule 56.1, which requires that "each fact in dispute ... shall refer with particularity to those portions of the record upon which the opposing party relies, ..." Plaintiff has attached several documents, wherein plaintiff attempts to point out inconsistencies between the interview reports of two eye-witnesses recorded by Detective Reed, and the witnesses' subsequent written statements to Detective Lewis. The court has carefully considered those documents, and, concludes that despite minor inconsistencies in the witnesses' accounts, and despite one witness' failure to identify plaintiff as the perpetrator in a line-up, the record contains ample facts supporting a finding of probable cause. Plaintiff was arrested pursuant to a warrant issued by an associate circuit judge of Clay

County, and subsequently indicted by a grand jury on charges of armed robbery and armed criminal action. Moreover, the uncontroverted facts reveal that Officer David Schroeder, not Detective Lewis, arrested plaintiff. Lewis' involvement in the arrest was limited to making the decision to send the criminal case file to the Clay County Prosecutor's office to review for possible prosecution.

Plaintiff has not only failed to allege the violation of a constitutional right that was clearly established at the time, but also fails to establish the "violation of any constitutional right at all." *See Siegert v. Gilley,* 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991) (compelling lower courts, when faced with a claim of qualified immunity, to analyze first whether a plaintiff has alleged the violation of any constitutional right at all); *Uhlrig v. Harder,* 64 F.3d 567, 571 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996) (recognizing analytical framework articulated in *Seigert* ). Plaintiff has simply not met his burden of showing that he had a constitutional right to be free from arrest for an offense for which he was not convicted. Accordingly, the court finds defendant is entitled to summary judgment on this claim.

### 2. § 1983 Claim for Malicious Prosecution.

■ The Tenth Circuit has recognized the viability of malicious prosecution claims under section 1983. *Taylor v. Meacham,* 82 F.3d 1556, 1560–61 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996). The common law elements of malicious prosecution are the "starting point" for the analysis of a section 1983 malicious prosecution claim. *Id.* at 1561. In order to establish a malicious prosecution claim under section 1983, however, the plaintiff must also prove a constitutional violation of the Fourth Amendment right to be free from unreasonable seizures. *Id.*

■ The common law elements of a malicious prosecution action are: (1) commence-

ment of a prosecution against the plaintiff, (2) instigation by the defendant, (3) termination of the proceeding in favor of the plaintiff, (4) want of probable cause for the prosecution, (5) defendant's conduct was actuated by malice, and (6) plaintiff was damaged. *Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 807 (Mo.1984); *Stafford v. Muster,* 582 S.W.2d 670, 675 (Mo.1979).[2]

■ In our April 22, 1997, memorandum and order, we determined that plaintiff had failed to present any evidence establishing two of the elements: want of probable cause and malice. Plaintiff, in his most recent submissions, has failed to come forward with facts to support either of these same two elements of a malicious prosecution cause of action. Because plaintiff has not established the common law elements of malicious prosecution, which are the " 'starting point' for the analysis of a § 1983 malicious prosecution claim," *see Taylor,* 82 F.3d at 1561, we need not reach whether plaintiff has presented any evidence that defendant's conduct violated his Fourth Amendment right to be free from unreasonable seizures. Accordingly, defendant is entitled to summary judgment on any section 1983 malicious prosecution claim.

### 3. Claim under § 1985(3).

■ In the pretrial order, plaintiff states: "John Lemons' Civil Rights were willfully violated [sic] Article (42) U.S.Code of Civil Rights the years (sections) . . . 1985, on August 5, 1993." Plaintiff does not specify what occurred on the date of August 5, 1993, that would have resulted in a violation of 42 U.S.C. § 1985. The uncontroverted facts establish that on August 4, 1993, an associate circuit judge of Clay County, Missouri, issued a robbery warrant for plaintiff's arrest, and on August 11, 1993, Kansas City, Missouri, police officer David Schroeder arrested plaintiff at plaintiff's residence on the outstanding warrant.

■ Section 1985(3) creates a cause of action against persons who conspire to deprive a person or class of equal protection or

---

2. In our memorandum and order of April 22, 1997, we applied the choice of law rules and concluded that Missouri law governs plaintiff's

tort claims because all of the actions of defendant about which plaintiff complains occurred in Missouri.

equal privileges and immunities. *Bisbee v. Bey,* 39 F.3d 1096, 1102 (10th Cir.1994), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995). To come within section 1985(3), a complaint must allege four elements: (1) a conspiracy; (2) "for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws;" (3) that the conspirators committed some act in furtherance of the conspiracy; and (4) that the plaintiff was either "injured in his person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge,* 403 U.S. 88, 103–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). Pleading or proving a section 1983 violation is not a prerequisite to liability under section 1985(3). *Dixon v. City of Lawton, Oklahoma,* 898 F.2d 1443, 1447 (10th Cir.1990).

Here, plaintiff has wholly failed to support his section 1985(3) allegation with any evidence of a "conspiracy." The record is devoid of any evidence that would establish an agreement between defendant Lewis and another person to deprive plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws. *See Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989) (plaintiff must provide "specific facts showing agreement and concerted action" to sustain civil rights conspiracy claim).

Nor has plaintiff presented any evidence to establish a class-based or racially discriminatory animus. "[I]n the absence of allegations of class-based or racial discriminatory animus, the complaint fails to state a claim under § 1985." *Bisbee,* 39 F.3d at 1102 (quoting *Campbell v. Amax Coal Co.,* 610 F.2d 701, 702 (10th Cir.1979) (per curiam)). In light of the absence of any facts to support plaintiff's conclusory assertion of a cause of action under section 1985(3), summary judgment must be granted in favor of defendant.

II. *Plaintiff's Motion to Declare an Attorney Mentally Incompetent or Incapacitated Pursuant to Local Rule 83.6.9(b) (Doc. # 78).*

■ Plaintiff requests that this court invoke Local Rule 83.6.9(b). Local Rule 83.6.9(b) provides, in part:

Whenever the Committee on Conduct of Attorneys, through its chairman, shall petition the Disciplinary Panel to determine whether an attorney who is a member of the bar of this court is incapacitated from continuing the practice of law by reason of mental or physical infirmity or illness or use of drugs or intoxicants, the Disciplinary Panel may take or direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including the examination of the attorney by such qualified medical experts as the Disciplinary Panel shall designate.

Plaintiff has made absolutely no showing of any facts which would implicate the provisions of Local Rule 83.6.9(b). Because plaintiff has presented no basis for the court to take any action under this rule, the court will deny plaintiff's motion as wholly inappropriate and legally frivolous.

IT IS THEREFORE ORDERED that the supplemental motion of defendant Ramona K. Lewis for summary judgment (Doc. # 73) is granted.

IT IS FURTHER ORDERED that the motion of plaintiff John E. Lemons, Jr., to declare an attorney mentally incompetent or incapacitated pursuant to Local Rule 83.6.9(b) (Doc. # 78) is denied.