**Steven WILLIAMS, Plaintiff,**

v.

**Angela GRANT, Mental Health Director; Lieutenant Morales; and Four Unknown Prison Guards, Defendants.**

No. CV408–203.

United States District Court,
S.D. Georgia,
Savannah Division.

July 6, 2009.

Steven Williams, Alamo, GA, pro se.

### *ORDER*

G.R. SMITH, United States Magistrate Judge.

Plaintiff Steven Williams brought this 42 U.S.C. § 1983 civil rights action against Coastal State Prison personnel. Doc. 1. The Court previously screened his complaint under 28 U.S.C. § 1915A and concluded that he stated an Eighth Amendment claim. Doc. 8 (*adopted* by doc. 12). It also denied his motion for appointment of counsel, since he holds no constitutional right to that and, despite his claimed processing deficits, he has been able to adequately present his own case. Doc. 13.

■ Moving again for appointment of counsel, Williams provides an affidavit from a fellow inmate attesting to Williams's handicaps and complete inability to present his claims. Doc. 15 at 1, 5. Blind in one eye and impeded by "not normal" vision in the other, Williams says that he also is mentally handicapped (having suffered a 2004 stroke and now taking Prozac), is unable to read or write, and is totally dependent upon other inmates to assist him "in legal matters that should be confidential...." *Id.* at 1. His case is complex, he insists, and he is unable to conduct an investigation without proper help from an attorney. *Id.* at 2.

This Court cited, inter alia, *German v. Broward County Sheriff's Office,* 315 Fed. Appx. 773 (11th Cir.2009), in denying plaintiff's prior counsel-appointment motion. Doc. 13 at 2. Inmate-plaintiff German brought an Eighth Amendment § 1983 claim against a private prison operator and individual defendants. He alleged that a "Ms. Askew," the facility's health service administrator, and other *de*-fendants "violated his rights when they showed deliberate indifference to a neck injury he suffered during a beating in 1994...." *Id.* at 774. They allegedly ig-

nored "his complaints of pain, swelling, loss of movement, and loss of strength and by denying him proper testing despite a specialist's ... recommendations, ... his condition worsen[ed] to the point that it became a permanent injury and required major surgery three years later." *Id.*

German unsuccessfully moved the district court for appointment of counsel. He argued that his incarceration prevented him from effectively presenting his claims, especially given the level of discovery necessary since credibility was such a major issue in his case. *Id.* at 777. He showed on appeal that he had repeatedly encountered legal obstacles, including the defendants' resistance to providing him with pertinent information, such as two doctors' addresses so he could serve them with the complaint, and the intricacies of the discovery rules. He claimed he could not rely on prison officials to disclose relevant evidence. *Id.*

Additionally, numerous technical rulings against German indicated that he was experiencing significant difficulty in proving elements of his legal claim because he lacked the ability to take oral depositions and locate certain defendants. *Id.* Finally, he argued that the district court failed to inquire into the factual and legal issues that German was prevented from presenting, so it could not properly conclude that he was able to proceed without the assistance of counsel. *Id.*

Agreeing with German, the Eleventh Circuit reversed the district court. It first recounted its long-settled standard:

Pursuant to 28 U.S.C. § 1915(e)(1), the district court may appoint counsel to any party unable to afford counsel. However, like other civil litigants, prisoners raising civil rights claims "have no absolute constitutional right to counsel." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir.1993). In civil cases, appointment of counsel is "justified only by exceptional circumstances such as the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner." *Id.* (internal quotations omitted). "The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court," but when the facts and issues in the case are simple, appointment of counsel is not required. *Id.*

*Id.* at 777. Thus, "[t]he existence of such circumstances will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individual bringing it." *Daniel v. McDonough*, 2008 WL 4327273 at *1 (N.D.Fla. Sept. 16, 2008) (unpublished). Applying this standard to the above-stated facts, the *German* court concluded

that while German has alleged disputed facts sufficient to preclude summary judgment, the district court's failure to appoint him counsel prohibited him from presenting the full merits of his case. Specifically, as a pro se prisoner, German was unable to conduct effective discovery, which led to his being unable to locate and serve two key parties, namely [the two doctors'] testimony in particular would presumably be highly relevant to German's case. Moreover, while the legal claims German raises are not complex, his claim is based on very detailed factual allegations regarding Askew's job responsibilities, and on remand, it will need to be determined whether Askew was deliberately indifferent to a serious medical need. Accordingly, counsel was necessary for German to effectively present his case, and the district court abused its discretion in denying his request to appoint counsel.

*Id.* at 777.

*German*, which is "unpublished" and thus not binding on this Court, is an exception from the norm, if not an aberration.

*See Shaw v. Cowart,* 300 Fed.Appx. 640, 642–43 (11th Cir.2008) (indigent pro se prisoner's civil rights claims against correctional officers for alleged due process violations in prison disciplinary proceedings, use of excessive force, and retaliation for filing grievance as well as his claims against current and former wardens for failure to protect him from officers did not require appointment of counsel, where claims were not complicated and prisoner's pleadings and motions demonstrated that he had adequate understanding of issues); *Hicks v. Ferrero,* 285 Fed.Appx. 585, 587 (11th Cir.2008) (district court did not abuse its discretion in denying state prisoner's multiple requests for counsel in § 1983 action against prison officials for First Amendment retaliation because exceptional circumstances did not exist; prisoner had a demonstrated ability to represent himself and his retaliation claim against the two defendants was straightforward); *Ransom v. Westphal,* 2009 WL 1146421 at *1 (E.D.Cal. April 28, 2009) (unpublished) ("so long as a pro se litigant . . . is able to articulate his claims against the relative complexity of the matter, the 'exceptional circumstances' which might require the appointment of counsel do not exist") (unpublished) (quotes and cite omitted).

■ On top of that, this is a problematic area because 1915(e)(1) does not mandate appointment of counsel for indigent prisoners nor require an attorney to accept a district court's invitation to represent such a prisoner litigant. *See Mallard v. U.S. Dist. Court,* 490 U.S. 296, 301–08, 109 S.Ct. 1814, 1818–22, 104 L.Ed.2d 318 (1989); *Verdi v. Kirby,* 2009 WL 537496 at *2

(M.D.Ga. March 2, 2009) (unpublished). Hence, a successful § 1915(e)(1) motion could reap very little, for Congress has simply declined to spend tax dollars for lawyers to address this access-to-justice issue, though a lawyer "nudged" under § 1915(e)(1) may, upon review of the inmate's case and 42 U.S.C. § 1988's fee-shifting provisions, step up to that plate.

Overarching all of that is a more practical concern: It is simply too easy for convicted criminals to exaggerate their physical/mental incapacities while simultaneously touting litigation's ever-burgeoning complexities—all within a judicial system awash with inmate cases. Appellate courts have not explained how district courts are supposed to assess the factual merits of an inmate's claim of physical or mental incapacity to represent himself. *Every* inmate-plaintiff can claim this or that deficit in an effort to win free legal assistance. Should courts simply accept such claims as true? False? Hold hearings on them?[1]

Nor do such opinion-writers seem to consider the fact that there are more inmate-plaintiffs who could meet the *German* standard than there are pro bono oriented lawyers for this Court to "appoint" (read: publicly and "altruistically" pressure an attorney to take a case which, in the modern litigation history of this District, *perhaps* might result in a $1 nominal damages verdict and a follow-up 42 U.S.C. § 1988 fee award, and even that is quite rare).

The allegations in this case are reasonably straightforward: prison officials recklessly prescribed delusion- and paranoia-inducing pharmaceuticals to Williams, then

---

1. Courts may hold hearings to resolve (without a jury) factual disputes about the administrative exhaustion required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir.2008); *Singleton v. Dep't of Corr.,* 2009

WL 1028035 at *1 (11th Cir. April 17, 2009) (unpublished). Engrafting that mechanism here might assist the § 1915(e)(1)-determination process, where it is simply unrealistic to accept carte blanche every inmate-plaintiff's incapability claim.

dragged him (while handcuffed and unable to walk) across 50 feet of asphalt instead of first fetching him a wheelchair. Finally, Williams says one "officer tried to get me to talk by putting the flame of his cigarette lighter against my wrist. I screamed in pain. He then put his lighter flame against my forearm and made me scream again." Doc. 8 at 3–4. These assertions, the Court previously concluded, were enough to sustain Williams's complaint. *Id.* at 7.

The problem here is that plaintiff's case can, with a modicum of effort, be portrayed to be as "complex" as German's. Consider the discovery obstacles the defendants here may easily present (including a simple non-response or, even more problematical to an unsophisticated litigant, a non-responsive discovery response), if not also a complex summary judgment motion against Williams. Also consider the distinction a lay person must grasp between how he must respond to an evidentially or non-evidentially supported, Local Rule 56.1 Statement of Material Facts, or to an Fed.R.Civ.P. 33(a) Interrogatory versus an Fed.R.Civ.P. 36 Request to Admit, including the consequences of failing to respond to one as opposed to the other. Other litigation-heartland matters include the strategizing and analysis that figures into discovery requests and responses, formulating deposition questions and understanding permissible objections, managing the varying time limits for discovery, motions, Fed.R.Civ.P. 72 Objections, appeals, and so on.[2] And all the while, pro se litigants are bound by the same rules as the represented; the only leeway the Court can grant is in liberally construing pleadings to compensate for their inartfulness.[3]

Thus, Williams already has a good argument that he now meets the *German* standard, and if not now then very soon (e.g., defendants could quickly and easily engage in hardball discovery tactics, load up a complex summary judgment motion against him and so forth; plaintiff also could credibly insist that his "psychotropic mis-prescription claim" is based on very detailed factual allegations regarding prison-medical defendants' responsibilities,

---

**2.** The basic litigation tasks can be so daunting that this Court sometimes issues a "litigation primer" to pro se plaintiffs. *See, e.g., Mobley v. Chatham County, Georgia,* No. CV408–221, doc. 11 (S.D.Ga. June 25, 2009) (unpublished) (reminding pro se, employment-discrimination plaintiff of his duty to effect Fed.R.Civ.P. 4 service, obey Fed. R.Civ.P. 5 ("Certificate of Service" requirement), conduct discovery while observing Fed.R.Civ.P. 26's requirements, resort to Fed. R.Civ.P. 37 if necessary to compel discovery, and properly respond to a summary judgment motion if filed).

**3.** *See Miller v. Donald,* 541 F.3d 1091, 1100 (11th Cir.2008) (pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed) (quotes and cite omitted); *Smith v. Belle,* 2009 WL 724028 at *4 (11th Cir.2009) (unpublished) (but this leniency "does not give a court license to serve as de facto counsel for a party .... [thus, for example,] 'arguments not raised on appeal by pro se litigants are deemed abandoned.' ") (quotes and cite omitted); *Nelson v. Barden,* 145 Fed.Appx. 303, 311 n. 10 (11th Cir.2005) ("a defendant's pro se status in civil litigation generally will not excuse mistakes he makes regarding procedural rules."); *Wayne v. Jarvis,* 197 F.3d 1098, 1104 (11th Cir.1999) (liberal construction of the pleading requirements for pro se litigants does not equate with liberal deadlines), overruled on other grounds by *Manders v. Lee,* 338 F.3d 1304 (11th Cir.2003); *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a pro se litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"); *Lemons v. Lewis,* 969 F.Supp. 657, 659 (D.Kan.1997) (pro se status does not absolve litigant of duty to comply with fundamental procedural rules); *Bivens v. Roberts,* 2009 WL 411527 at *4 (S.D.Ga. Feb. 18, 2009) (unpublished) ("judges must not raise issues and arguments on plaintiffs' behalf").

that it requires a pharmacological expert-witness, etc.).

And if all of that is true, then it is but a small step to conclude the same about the *hundreds* of inmate cases that regularly flow through this District every year. Too, what if Williams (who is, after all, a convicted *criminal*) is simply lying about his incapacities? Again, *German*-type cases fail to guide district courts on resolving obvious doubts that surround such assertions, and there is no good answer: Again, should this Court stop and hold a hearing in every prisoner case to probe for malingering or fabrication? *German* was and should not be the norm in this, a largely unworkable and unrealistic area of law, for courts routinely conclude, often in summary fashion, that a given case is not *that* difficult and that the plaintiff *is* talented enough, while at the same time courts refuse to "undo" the fatally erroneous litigation decisions those litigants so often make.

This Court again **DENIES** plaintiff Steven Williams's motion for appointment of counsel. Doc. 15. However he has man-aged to do so, he has been able to present his *relatively* straightforward claims to this Court in a legible and coherent fashion, and his "inmate lawyer" does not indicate that he will curtail the assistance he has been providing to him.

Finally, Congress has spoken more forcefully through § 1988[4] than § 1915(e)(1). Hence, if an inmate has a truly merit able case, then § 1988's fee-shifting, "private attorney general" incentive ought to drive representational results, not the "professional compulsion" lurking behind a judge's § 1915(e)(1) request.[5] Plaintiff Williams is invited to shop his case to private lawyers. *See, e.g., Stanley v. Rich,* CV605–075 (S.D.Ga. filed July 25, 2005) (inmate-plaintiff represented by two contingency-fee based lawyers, including the renowned Bobby Lee Cook,[6] (who, it has been said, could keep a jury on the edge of its seat by reading from the Atlanta phone directory).)

---

**4.** 42 U.S.C. § 1988 authorizes "attorney fees in civil rights cases [and thus] encourage[es] private attorney generals to come forth and challenge governmental abuses...." *Raney v. Fed. Bureau of Prisons,* 222 F.3d 927, 936 n. 7 (Fed.Cir.2000); *see also Hare v. Potter,* 549 F.Supp.2d 698, 705–06 (E.D.Pa.2008). "Congress observed that citizens with meritorious civil rights claims sometimes could not afford a competent attorney. Fee shifting statutes seem to recognize the reality that defending the underdog is fine, but it's usually the upperdog who can pay the big fees." *Ray v. U.S. Dep't of Justice,* 87 F.3d 1250, 1251 n. 1 (11th Cir.1996) (quotes and cites omitted).

**5.** Consider a lawyer's reaction to that. Reminding himself that he has other cases before that judge, he might wonder what happens if he declines the request, especially if he has been asked and similarly declined in the past. Compare that to the lawyer who reviews an indigent plaintiff's case and finds it compelling enough to take, as incentivized by § 1988 (hence, with the reasonable chance that the "upperdog" may wind up paying his fees).

**6.** Inmate-rights interest groups (e.g., www.schr.org (site last visited June 30, 2009)) might consider beckoning inmates to send their cases to them for legal screening, then presentation—perhaps through a restricted-access intranet site—of case summaries for § 1988–motivated civil rights lawyers to peruse. The current lack of such "case-information flow" may explain why more lawyers do not represent inmates in this District. Hence, facilitating a freer flow may increase § 1988 (merits-driven) representation and, resultingly, lower the net number of requests for 1915(e)(1)-based representation.