Mindy J. STEGALL, Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY, et al., Defendants.

No. 97–2250–KHV.

United States District Court, D. Kansas.

Feb. 5, 1998.

Bruce D. Mayfield, Overland Park, KS, Lawrence W. Ferguson, Columbia, MO, for plaintiffs.

Elizabeth Drill Nay, Douglas C. McKenna, Lewis, Rice & Fingersh, L.C., Kansas City, MO, Joel W. Rice, Elisabeth E. Snyder, Kalvin M. Grove, Daniel A. Kazlauski, Fox & Grove, Chtd., Chicago, IL, for defendants.

## *MEMORANDUM AND ORDER*

VRATIL, District Judge.

In this action, Mindy Stegall charges that her former employer, Great American Insurance Company, engaged in malicious prosecution and abuse of process when it caused her arrest and criminal prosecution in the District Court of Johnson County, Kansas. This matter comes before the Court on *Defendants' Motion For Summary Judgment As To Counts Two And Three Of Plaintiff's Amended Complaint* (Doc. # 65) filed December 9, 1997. For reasons which follow, the Court finds that defendant's motion should be sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993), A factual dispute is "material" only if it "might affect the out-

come of the suit under the governing law." *Anderson,* 477 U.S. at 248, A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Secs. Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Celotex Corp.,* 477 U.S. at 324. The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

■ "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment maybe granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Where the nonmoving party fails to properly respond to the motion for summary judgment,

the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan.Rule 56.1. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* 477 U.S. at 251–52. Ever mindful of these summary judgment standards, we now turn to the merits of defendants' motion.

## Undisputed Facts

■ The following facts are undisputed or, where disputed, construed in the light most favorable to plaintiff:[1]

Defendant Great American Insurance Company [Great American] is an Ohio corporation with headquarters in Cincinnati, Ohio. It sells a full range of insurance products, including inland marine insurance, and has an office in Overland Park, Kansas, In 1991, Jerry Bilecky, a Divisional Senior Vice President in Cincinnati, created the position of Inland Marine Specialist and hired Mindy Stegall to fill it. Stegall's initial supervisor was Ed Moran, a Great American inland marine manager, who reported to Bilecky. When Moran transferred to Atlanta, Georgia, Stegall reported directly to Bilecky.

When Great American hired Stegall, it assigned her a company car and placed her on an expense account which allowed Stegall to reimburse herself on a monthly basis for travel and entertainment expenses which she legitimately incurred in the course of her work.[2]

---

**1.** In responding to defendants' statement of undisputed facts, plaintiff frequently responds that she is without facts and information which allow her to admit or deny. *See Plaintiff's Supplemental Response To Defendants' Motion For Summary Judgment As To Counts II And III Of Plaintiff's Amended Complaint* (Doc. # 107) filed February 2, 1998 [*Supplemental Response*]. In responding to a motion for summary judgment, however, a party cannot rely on ignorance of facts or escape summary judgment on the ground that contrary evidence may turn up at trial. *Conaway v. Smith,* 853 F.2d at 794. When plaintiff claims that she cannot admit or deny, the facts set forth by defendants are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

**2.** Plaintiff refuses to admit that use of the expense account was limited to legitimate expenses. She also asks the Court to levy sanctions and attorneys' fees; because in requesting plaintiff to admit that use of the expense account was limited to legitimate expenses, defendants have put her in a situation whereby if she admits, she is "casting aspersions on the legitimacy of her own case." One purpose of summary judgment motions, however, is to "cast aspersions" on claims which are without merit as a matter of law.

Defendants' tactics in this regard are not "unscrupulous" or "reprehensible," and plaintiffs' request for sanctions is overruled, Moreover, because plaintiff cites no evidence for any suggestion that Great American authorized her to reim-

Although Great American provided Stegall an office at its office in Overland Park, Kansas, no one advised her that she could not work at home or told her that she had to be at the office during any given part of the business day. On the other hand, Stegall worked at home and never told anyone at Great American that she was doing so. In the summer of 1993, Bilecky became concerned that Stegall was not working out of her Great American office because he experienced a considerable time lag in her return of telephone calls. The problem continued throughout the remainder of 1993 and into 1994.[3] In March 1994, Bilecky asked Candace McMahon, Director of Corporate Security for Great American, to investigate Stegall's whereabouts during normal business hours. To that end, Bilecky gave her Stegall's weekly itineraries. McMahon began her investigation by spot checking Stegall's office 15 to 20 times and found that Stegall was seldom at the office.[4] As a result, Bilecky authorized the private investigative firm of Clarence Kelly and Associates, Inc., to further investigate Stegall's whereabouts during business hours. The report of the private investigators confirmed that Stegall was at home or conducting personal errands during business hours.[5]

In the course of her investigation, McMahon tried to match Stegall's itineraries with her expense account entries, McMahon noticed that Stegall had used identical generic receipts, without identifiers, for different restaurants in different locations. McMahon went to some of the restaurants and verified that they did not use generic receipts. McMahon also noticed that Stegall's mileage reimbursement requests were inflated, in that Stegall had submitted a claim which listed mileage from Great American's Overland Park office to downtown Kansas City as 70 miles.[6] McMahon reported to Bilecky the results of her investigation and the findings of the private investigators, and Bilecky authorized McMahon to confront Stegall with the results of the investigation.

On the morning of July 7, 1994, McMahon and Tom McDaniel, another member of Great American's Corporate Security Department, visited Stegall at her home. The purpose of the visit was to give Stegall an opportunity to explain the discrepancies revealed in Great American's initial investigation, Stegall had a computer and a telephone at her home and she told McMahon and McDaniel that she often worked out of her home. McMahon claims that she saw no office equipment in Stegall's house, but the computer was visible from the foyer.

■■■ Stegall did not admit that she had used her expense account to defraud Great American, nor did she offer to make restitution. In fact, she denied that she had done anything wrong and explained any discrepancies by stating that she could not remember the circumstances surrounding the alleged discrepancy, that she sometimes forgot to record the names of people she ate lunch with, that she could have misidentified her luncheon guests on her reimbursement requests, that she had made mistakes in completing the reimbursement forms, or that

burse herself for illegitimate expenses, the Court deems the contrary proposition to be undisputed for purposes of this motion.

3. Plaintiff denies that there was any "problem" regarding her delay in returning telephone calls, but the evidence which she cites in support of her denial does not raise a genuine issue of fact on that issue. *See Deposition of Mindy Stegall*, pages 134 and 137 (Exhibit F to *Supplemental Response*).

4. Plaintiff objects that the term "seldom" is "judgmental" and denies that she was "seldom" at the office when McMahon looked for her. Without record evidence that plaintiff was ever *present* when McMahon looked for her, plaintiff fails to raise a genuine issue of triable fact on this issue.

5. Plaintiff claims that she ran personal errands only "occasionally," and that when she was home, she was working. Plaintiff cites no record support for this position.

6. Plaintiff denies that she "willfully overstated" her reimbursements, but her affidavit does not corroborate this denial. The affidavit states only that plaintiff never admitted fraudulent use of her expense account. The record contains no flat-out statement, under oath, that plaintiff did not "willfully" overstate her reimbursements.

Plaintiffs claim that the term "inflated" is ambiguous does not raise a genuine issue of material fact whether plaintiff overstated the expenses for which she reimbursed herself.

she had intended to follow her itineraries but her plans had changed. Stegall did admit that she had submitted receipts which were not pre-printed with names of specific restaurants. She stated that she had to use generic receipts from Applebee's restaurant because it didn't give receipts and Great American required receipts for expenses over $25.00. Stegall also admitted that the expense account could have inaccurately reflected dinners instead of lunches, and that sometimes she had not eaten the meals described on her reimbursement forms.[7] By the end of the meeting, McMahon concluded that Stegall had admitted stealing from Great American. McMahon took possession of Stegall's company car, told Stegall that she was suspended pending further investigation, and reported back to Bilecky and other members of senior management. The next day, July 9, 1994, Bilecky informed Stegall that her employment with Great American was being terminated for misconduct.

While conducting an inventory of Stegall's items at her Overland Park office, McMahon obtained books of blank generic receipts of the sort Stegall had used for expense account submissions. Based on this discovery, McMahon reviewed Stegall's expense account further and found that Stegall had submitted additional generic receipts. McMahon followed up by contacting various insurance agents listed in Stegall's expense reports to determine whether Stegall had had lunch with them on the dates and at the locations

she had listed. Several agents confirmed that they had not.

Great American has a corporate policy regarding the reporting of criminal activity. In pertinent part, Great American's policy provides:

> It is the policy of Great American and its subsidiaries that any employee having knowledge or suspicions of an illegal act report the matter promptly to Corporate Security. Employees will cooperate in the investigation of any reported problem.

> It is the policy of Great American to prosecute whenever a crime has been committed against the Company. Corporate Security will pursue prosecution as well as possible recovery of financial loss.

*Id.* This policy has been emphasized as an important part of Great American's operating philosophy.

Pursuant to company policy, on or about July 22, 1994, McMahon contacted the Overland Park, Kansas Police Department to report the results of her investigation. On August 10, 1994, McMahon provided the police department Stegall's original expense account receipts and a list of the insurance agents and meals in question. The following week, on August 16, 1994, Detective Bobbie Hohnholdt contacted McMahon to inform her that she had been assigned to the case and intended to contact the insurance agents about the meals in question. Great American was concerned about potential damage to

---

**7.** Plaintiff denies that she overcharged Great American for legitimate business expenses, but she again cites no record evidence which constitutes outright support for her denial. Her affidavit merely denies that she *admitted* using her expense account to defraud Great American.

Stegall claims at worst that her expense account may have contained "inaccuracies" with regard to the date, time, place or attendees at a business meal. This, however, is not what her affidavit says. What it *does* state is that "[t]here are a number of plausible explanations as to why some of the people shown on [her] expense account may not have had a specific lunch with [her] and [she is] prepared to offer these explanations under oath at trial."

The time to offer explanations, if plaintiff relies on them as a basis to avert entry of summary judgment, is now. At the summary judgment stage, affidavits must "set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein." Fed .R.Civ.P. 56(e). To be sure, the nonmoving party need not produce evidence in a *form* that would be admissible at trial, but the content or substance of the evidence must be admissible. *Celotex Corp.*, 477 U.S. at 324; *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir.1994). Therefore, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Furthermore, "generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975); *see also Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990).

its business relationship with these agents if police subjected them to questioning, McMahon therefore questioned how Detective Hohnholdt wanted to handle that. The detective stated that she had no problem with McMahon conducting the interviews with agents because the detective would do her own investigation anyway. Detective Hohnholdt asked McMahon to just forward the results when she was done.

On September 26, 1994, McMahon wrote the detective to report the results of her further interviews. Among other things, McMahon reported that she had interviewed Stegall; that Stegall admitted that she had created fictitious receipts for business luncheons that were not taken; and that "Stegall was shown one type of receipt that she had used on thirteen (13) occasions and she agreed that they were fictitious." Thereafter, McMahon made herself available to the police and prosecutors and had several follow-up contacts with them. McMahon fully responded to police and prosecutorial inquiries and did not withhold any information requested by government officials or by Stegall's criminal defense attorney.

Almost two months later, on November 17, 1994, Stegall's lawyer spoke with an attorney for Great American. In the conversation, the lawyer for Great American advised plaintiffs lawyer that the company had turned over Stegall's expense accounts to the Overland Park police department for criminal prosecution but that if Stegall was happy with her unemployment award and would agree not to sue Great American, the prosecution could be discontinued. On more than one occasion, the Assistant District Attorney offered to dismiss the charges if Stegall would agree not to pursue a civil action against Great American.[8]

On or about March 29, 1995, over nine months after McMahon first contacted the police, the prosecutor for Johnson County, Kansas charged Stegall with six counts of felony stealing by fraud and falsifying expense receipts. The District Attorney's Office for Johnson County prosecuted the case, which went to trial on July 15, 1996 in the District Court of Johnson County, Kansas. Although Great American had turned over evidence of numerous false meal receipts, the prosecutor tried Stegall on only two meal receipts.[9]

On July 15, 1996, after the presentation of the prosecution's evidence, Stegall moved to dismiss. The court denied the motion and held that a *prima facie* case had been established because Stegall's expense report claimed a lunch with Sue Altman and Altman testified that no lunch had taken place. The next day, on July 16, 1996, after the close of all the evidence, the court sustained Stegall's motion for a judgment of acquittal.

Stegall admits that a number of meals for which she obtained reimbursement never took place. She admits that she used generic receipts, mischaracterized meals, and misidentified restaurants and/or meal guests. She also admits that her mileage claims may have contained inaccuracies. The parties have deposed fifteen of the insurance agents with whom Stegall claimed to have had meals. Except for two of them, the agents testified that they did not have a meal with Stegall on the dates and at the places indicated on her expense account submissions. Some agents stated that they had never eat-

---

8. Plaintiff cites a letter setting forth such an offer, dated June 21, 1995, from Steven J. Obermeier, Assistant District Attorney. The letter purports to memorialize a conversation between plaintiff's criminal lawyer and the Office of the District Attorney, in which the State of Kansas proposed to dismiss the case in return for Stegall paying court costs, making restitution for the billed lunches that did not occur, and agreeing not to sue Great American on any claims arising out of the filing of the charges in the criminal case. *See Supplement To Plaintiff's Response To Defendants' Motion For Summary Judgment As To Counts II And III Of Plaintiff's Amended Petition* (Doc. # 100) filed January 20, 1998.

9. Count I charged that in June, 1993, Stegall submitted a false expense account pertaining to business meals on April 30, 1993, and obtained or exerted unauthorized control, or obtained by deception control over property (proceeds of an expense account) valued at less than $500,00, with intent to permanently deprive the owner, Great American, of the possession, use or benefit of said property in violation of K.S.A. § 21–3701. Count charged the same offense with regard to a business meal on November 11, 1993.

en at the listed restaurant or had not eaten there with Stegall.

Defendant argues that as a matter of law, Stegall cannot establish a claim for malicious prosecution or abuse of process, and that Stegall's claim for abuse of process is barred by the applicable statute of limitations.

## Analysis

### I. Plaintiff's Claim for Malicious Prosecution

■ Under Kansas law, a claim for malicious prosecution requires a factual showing that (1) defendant initiated, continued, or procured the proceeding of which complaint is made; (2) defendant in doing so acted without probable cause; (3) defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages. *See Tappen v. Ager*, 599 F.2d 376, 378 (10th Cir.1979); *Thompson v. General Fin. Co.*, 205 Kan. 76, 91, 468 P.2d 269, 282 (1970); *Lindenman v. Umscheid*, 255 Kan. 610, 624, 875 P.2d 964, 974 (1994); *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438, 443 (1980).

Defendants argue that Stegall cannot establish a claim for malicious prosecution because (1) plaintiff has insufficient proof that defendants acted without probable cause and with malice;[10] and (2) defendants relied upon the independent advice of the prosecuting attorneys.

### A. Probable cause to initiate, continue or procure Stegall's prosecution for theft

■ To make out a claim for malicious prosecution, Stegall must adduce evidence from which a reasonable jury could conclude that defendants acted without probable cause in initiating, continuing or procuring the criminal proceedings against her. Probable cause exists when there are "reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which he or she is complaining." *Lindenman v. Umscheid*, 255 Kan. at 624, 875 P.2d

at 974; *see also Nelson v. Miller*, 227 Kan. at 277, 607 P.2d at 443–44. The fact that criminal proceedings were terminated in plaintiff's favor is not dispositive of the question whether defendants initiated the proceedings without probable cause. *Daniels v. Dillard Dep't Stores, Inc.*, 881 F.Supp. 505, 510 (D.Kan. 1995). Moreover, if the relevant facts are undisputed, the question of probable cause is one for the court to decide as a matter of law. *Sampson v. Hunt*, 233 Kan. 572, 582, 665 P.2d 743, 753 (1983), *Nelson v. Miller*, 227 Kan. at 277–78, 607 P.2d at 444.

The undisputed facts in this case establish that defendants had objectively reasonable grounds to suspect that Stegall had submitted false expense accounts, and that she had done so with intent to unlawfully deprive Great American of the possession, use, or benefit of its property. McMahon's investigation, as well as that of the private investigators, confirmed that Stegall was seldom at the office during business hours and strongly suggested that she was not putting in a full days' work for a full days' pay; that she had manufactured counterfeit restaurant receipts; and that her mileage reimbursement requests were inflated. Stegall did not explain the discrepancies to Great American's satisfaction. She admitted that her expense reports were inaccurate. Some of Stegall's clients denied that they had lunch with Stegall on the dates and at the places claimed. On this record, as a matter of law, defendants had objectively reasonable grounds to suspect that Stegall had stolen money from her expense account.

■ Plaintiff predictably disagrees with this conclusion, arguing that (1) defendants cannot equate the submission of erroneous meal receipts with the criminal act of stealing; and (2) defendants cannot base a claim of probable cause upon misconduct which did not ripen into a criminal prosecution. These arguments are frivolous. Plaintiff cites no legal authority for the proposition that our inquiry must be limited to the question whether defendants had probable cause to believe that plaintiff had committed the two

---

**10.** For purposes of this motion, defendants assume without admitting that Stegall can satisfy

the other elements of a claim for malicious prosecution.

discrete offenses that ultimately went to trial in the District Court of Johnson County, Kansas. The record reveals no evidence that defendants controlled or helped decide what charges would be pursued, and we have no reason to speculate that the circumstances known to the prosecuting attorney were identical to the circumstances known to defendants. The relevant question is whether *these defendants* had probable cause. Defendants were entitled to consider al̲l facts and circumstances which were apparent at the time they procured or initiated the criminal charges against plaintiff. *Thompson v. General Fin. Co.*, 205 Kan. at 90, 468 P.2d at 281. Moreover, in the face of objective evidence to the contrary, defendants were not required to accept plaintiff's "explanations" at face value or to agree that her claims were merely erroneous, rather than fraudulent.

▮ Finally, plaintiff insists that she has a number of innocent explanations for the discrepancies and that all will be revealed at trial. This tender begs the critical question—which we are called to decide on the record *now* before us—whether the case indeed will go to trial.[11] In addition, plaintiff has not demonstrated that her purported explanations are material to the question of probable cause. Want or existence of probable cause is limited to the facts and circumstances which were apparent to defendants at the time they initiated, continued or procured the prosecution of plaintiff. *Webb v. Airlines Reporting Corp.*, 1994 WL 185928, *3 (D.Kan. Apr.5, 1994) *aff'd* 57 F.3d 1081 (10th Cir.1995); *Thompson v. General Fin. Co.*, 205 Kan. at 90, 468 P.2d at 281. Plaintiff argues·that she "tried" to give McMahon the secret explanations, but the record includes no evidence to this effect. Plaintiff has therefore failed to raise a genuine issue of material fact concerning her purported explanations.

11. Plaintiff does not claim that facts essential to her opposition cannot be presented by affidavit at this time. *See* Rule 56(f), Fed.R.Civ.P. Accordingly, she cannot escape summary judgment by insisting that she has a winning hand and that she will play it at the time of trial.

12. The record suggests a genuine issue of material fact whether defendants initiated criminal proceedings with a motive other than bringing Ste-

▮ In summary, defendants are entitled to summary judgment because on this record a reasonable jury would necessarily conclude that defendants had objectively reasonable grounds to suspect that Stegall had made fraudulent use of her expense account. As a result, plaintiff cannot prevail on her malicious prosecution claim.[12]

**B. Advice of counsel defense**

▮ Under Kansas law, a defendant is not liable for malicious prosecution if he or she acts upon the advice of a prosecuting attorney. As the Kansas Supreme Court has stated:

> The advice of counsel, as to the institution of a criminal proceeding, sought and acted upon in good faith, will absolve one from damages for malicious prosecution; but only where all the facts known to the informant, and all which can be learned by a diligent effort to acquire information, have been laid before such counsel.

*Nelson v. Miller*, 227 Kan. at 279, 607 P.2d at 445; *accord Thompson v. General Fin. Co.*, 205 Kan. at 93, 468 P.2d at 283; *see also Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118, 1124 (10th Cir.) *cert. denied* 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979)(under Oklahoma law, even if informant is mistaken about facts, he is insulated by full disclosure to police who make independent decision whether to charge plaintiff with crime). Defendants argue that they are entitled to summary judgment because they made complete and truthful disclosure to the district attorney, who then advised defendants to prosecute. Plaintiff disagrees, arguing that the advice of counsel defense does not apply because McMahon reported a confession that did not happen, *i.e.*, Stegall's confession to the crime of stealing.

gall to justice, that is, to secure a release from civil liability. This issue is separate from that of probable cause, however, because evidence of malice does not establish a lack of probable cause. *Carnegie v. Gage Furniture, Inc.*, 217 Kan. 564, 568, 538 P.2d 659, 663 (1975). The Court does not reach defendants' argument on the issue of malice because it is not necessary to a disposition of the case.

Plaintiff's argument is flawed for the simple reason that it is not faithful to the evidence in the case. According to McMahon's deposition testimony—which is the only evidence cited on this critical point—Stegall told McMahon only that she would reimburse Great American for the cost of the lunches ($475.94). *Deposition of Candace McMahon* (October 21, 1997) at 105 (Exhibit D to *Plaintiff's Response To Defendants' Motion For Summary Judgment As To Counts Two And Three Of Plaintiff's First Amended Complaint* (Doc. # 77) filed December 29, 1997). The record contains no evidence that McMahon reported this statement to the police, or that she told them that Stegall "admitted using her expense account to steal from Great American." Plaintiffs argument on this point must therefore be rejected. Furthermore, because plaintiff identifies no other respect in which defendant made less than complete and truthful disclosure to the district attorney, defendants are entitled to summary judgment on their advice of counsel defense.

## II. Abuse Of Process Claim

■ A claim for abuse of process is distinct from a claim for malicious prosecution and to prevail, plaintiff must prove that (1) defendants made an illegal, improper or perverted use of civil process; (2) defendants had an ulterior motive or purpose in exercising the illegal, improper or perverted use of civil process; and (3) plaintiff was damaged by the abuse of process. *Safeguard Business Sys., Inc. v. Hoeffel*, 1991 WL 12867, *6 (D.Kan. Jan.16, 1991); *McElroy v. Safeway Stores, Inc.*, 1990 WL 11606, *6 (D.Kan. Jan.23, 1990); *Porter v. Stormont–Vail Hosp.*, 228 Kan. 641, 646, 621 P.2d 411, 416 (1980); *Wellsville Bank v. Sutterby*, 12 Kan. App.2d 585, 589, 752 P.2d 700, 703 (1988).

Defendants claim that they are entitled to summary judgment because the record contains no evidence that defendants acted with an improper or ulterior motive, or that they misused process in any way. Defendants also argue that Stegall's claim is barred by the two-year statute of limitations, K.S.A. § 60–513(a)(4). Plaintiff disagrees that defendants are entitled to summary judgment, arguing that defendants had both an improper motive (shielding themselves from civil liability) and an improper act (offering not to prosecute plaintiff if she released them from civil liability). Plaintiff also contends that the statute of limitations did not begin to run until July 6, 1996, when the state court exonerated her from criminal liability, and that her action was timely filed.

■ We first address the limitations issue. An abuse of process claim is governed by the two-year statute of limitations, K.S.A. § 60–513(a)(4). *Lindenman v. Umscheid*, 255 Kan. at 620, 875 P.2d at 972. The statute begins to run when the ulterior motive exists and defendants have made illegal, improper or perverted use of civil process. *Lindenman v. Umscheid*, 255 Kan. at 621, 875 P.2d at 973. Here, Stegall alleges that the *ulterior motive* was "to prevent plaintiff from bringing a civil suit against it and, when she would not agree, to retaliate against her for that decision." She alleges that the *improper use of process* occurred when defendants "offer[ed] not to prosecute in return for [plaintiff] granting [General American] a release from any civil liability it may have had arising out of her discharge from its employment." This offer occurred shortly after November 17, 1994, when Stegall's lawyer spoke with an attorney for Great American.[13] *See Affidavit Of Lawrence W. Ferguson—Exhibit C,* ¶ 3 (Exhibit C to *Plaintiff's Response To Defendants' Motion For Summary Judgment As To Counts Two And Three Of Plaintiff's First Amended Complaint* (Doc. # 77) filed December 29, 1997).

---

13. Plaintiff makes a separate claim that *after the criminal charges had been filed*, on more than one occasion, the assistant district attorney offered to dismiss the charges if Stegall would agree not to pursue a civil action against Great American.

The import of this claim is not clear. The record contains no evidence that Great American instigated, approved, ratified, or had other material involvement in the district attorney's offer, and the record yields no reasonable inference that the assistant district attorney extended the offer on behalf of Great American. Therefore the Court perceives no issue whether *defendants* misused process when the *State of Kansas* offered to dismiss charges if plaintiff agreed not to pursue civil suit against Great American.

Plaintiff filed her complaint on May 22, 1997—well more than two years after Great American's attorney made this offer. The statute of limitations therefore bars any remedy for abuse of process based on the statements of counsel for General American on November 17, 1994.

At a more fundamental level, the record discloses no genuine issue of material fact which would entitle plaintiff to proceed to trial on her abuse of process claim. First, the Court cannot agree that an unaccepted offer to refrain from initiating litigation constitutes "use of process" by the offeror. *Cf. McGlory v. Bohlender*, 1994 WL 326022, *2 (D.Kan. June 15, 1994)(false arrest, filing of false police report and false testimony in court constitute "use of process"); *Welch v. Shepherd*, 169 Kan. 363, 367, 219 P.2d 444, 447 (1950)(arrest constitutes "use of process"). Plaintiff cites no legal authority for the proposition that an unaccepted offer not to proceed with litigation constitutes use of process, much less illegal, improper or perverted use of process. Second, the undisputed evidence is that plaintiff did not accept General American's proposal, and she has articulated no factual basis for any claim that she sustained damage by virtue of the very fact that defendants made the offer in question.

Plaintiff fares no better if we ignore her own characterization of her claim and consider whether she might proceed on a claim that defendants procured the criminal charges in retaliation for the fact that plaintiff refused to release them from civil liability. The gravamen of the tort of abuse of process is not the wrongfulness of the ensuing criminal prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends. *Heck v. Humphrey*, 512 U.S. 477, 486 n. 5, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The gist of the tort is the misuse or misapplication of process, justified in itself, for an end other than that which it was designed to accomplish. *Tappen v. Ager*, 599 F.2d at 380. The mere initiation of proceedings, however—with or without justification—does not constitute abuse of process. *Id.* (if defendant used judicial process for proper purpose, though there be malice

in his heart, law recognizes no abuse of process); *McGlory v. Bohlender*, 1994 WL 326022, *2.

In summary, plaintiff's abuse of process claim is barred by the statute of limitations. Moreover, the claim fails on its merits because the record contains no genuine issue of material fact whether defendants misused process or plaintiff sustained damage as a result thereof.

**IT IS THEREFORE ORDERED** that *Defendants' Motion For Summary Judgment As To Counts Two And Three Of Plaintiff's Amended Complaint* (Doc. # 65) filed December 9, 1997, be and hereby is sustained.

**IT IS HEREBY FURTHER ORDERED** that *Defendants' Motion To Determine Sufficiency Of Plaintiff's Response To Defendants' Requests To Admit* (Doc. # 74) filed December 19, 1997, be and hereby is overruled as moot.

**IT IS THEREFORE ORDERED** that the following motions in limine filed January 9, 1998, be and hereby are overruled as moot:

(1) *Defendants' Motion In Limine No. 1 To Permit Interdiction Into Evidence Of All Potentially Fraudulent Meals Receipts Submitted By Mindy Stegall To Great American For Reimbursement* (Doc. # 81);

(2) *Defendants' Motion In Limine No. 2 To Exclude All Reference At Trial To Stegall's Unemployment Compensation* (Doc. # 83);

(3) *Defendants' Motion In Limine No. 3 To Exclude All Reference To The Criminal Trial Judge's Remarks Upon Stegall's Acquittal Of Criminal Charges* (Doc. # 85);

(4) *Defendants' Motion In Limine No. 4 To Exclude All Reference At Trial To Defendants' Alleged Involvement With An Anonymous Phone Call To Stegall's Subsequent Employer And Memorandum In Support* (Doc. # 87);

(5) *Defendants' Motion In Limine No. 5 To Bar Any Reference At Trial To The Parties' Settlement Discussions And*

*To Strike Kalvin Grove From Plaintiff's Witness List* (Doc. # 88), and

(6) *Plaintiff's Motion In Limine* (Doc. # 91).