Sami HAMMAD, Plaintiff,

v.

**BOMBARDIER LEARJET, INC.,** Defendant.

No. CIV.A. 00–1129–MLB.

United States District Court, D. Kansas.

March 29, 2002.

Fred W. Rausch, Jr., Fred W. Rausch, Jr., Chtd., Topeka, KS, for Sami A Hammad.

Sami A Hammad, Wichita, KS, pro se.

John C. Nettels, Jr., Morrison & Heckler L.L.P., Kansas City, MO, Stephanie N. Scheck, Morrison & Hecker L.L.P., Wichita, KS, for Bombardier Learjet.

## MEMORANDUM AND ORDER

BELOT, District Judge.

## I. INTRODUCTION

Plaintiff Sami Hammad, an employee of defendant Bombardier Learjet, Inc. (Learjet), filed suit alleging that he had been subjected to a hostile work environment based upon his race, religion, and national origin. Doc. 23, ¶ 9(a). This matter is

before the court upon defendant's motion for summary judgment. Doc. 25.[1] Finding jurisdiction proper, *see* 28 U.S.C. § 1331, the court DENIES defendant's motion.

## A. Summary Judgment Standard: Fed. R. Civ. P. 56

Before addressing the issues presented by the parties, it is important to put into perspective the scope of this court's inquiry on summary judgment. The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citations omitted); *see also Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*). The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be *material. See Schwartz v. Brotherhood of Maintenance of Way Employees,* 264 F.3d 1181, 1183 (10th Cir.2001); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2162 n. 3, 150 L.Ed.2d 272 (2001) (Ginsburg, J., concurring) (dismissing an allegation of fact that was disputed but irrelevant). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Bartell v. Aurora Pub. Schs.,* 263 F.3d 1143, 1146 (10th Cir.2001) (quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### 1. Moving Party's Burden

Defendant must initially show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. *See Adler,* 144 F.3d at 670. Defendant need not "support its motion with affidavits or other similar materials *negating* the [plaintiff's]" claims or defenses. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (emphasis in original). Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim. *See Adler,* 144 F.3d at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

### 2. Non–Moving Party's Burden

If defendant properly supports its motion, the burden shifts to plaintiff, who may not rest upon the mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts,

---

1. In ruling upon defendant's motion, this court has also considered (1) defendant's memorandum in support of its motion, (2) plaintiff's memorandum in opposition to defendant's motion, (3) defendant's reply to plaintiff's opposition, and (4) plaintiff's supplemental submission. Docs. 26, 31, 32, and 33.

or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994). Plaintiff cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. *See Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Put simply, plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*3. Presentation of Evidence*

 Certain local rules further govern the presentation of facts and evidence. Local Rule 56.1 requires defendant to set forth a concise statement of material facts. D. KAN. R. 56.1. Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which defendant relies. *See id.* The opposing memorandum must contain a similar statement of facts. Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which she relies and, if applicable, state the number of the defendant's fact that she disputes. The court may, *but is not obligated to*, search for and consider evidence in the record that would rebut the defendant's evidence, but that plaintiff has failed to cite. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir.2000); *Adler*, 144 F.3d at 672. All material facts set forth are deemed to be admitted for the purpose of summary judgment unless specifically controverted. *See Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir.1996) (applying the local

rules of the District of Utah). A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

 The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. *See Thomas v. International Bus. Mach's.*, 48 F.3d 478, 485 (10th Cir.1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. *See Adams*, 233 F.3d at 1246. Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1382 (10th Cir.1994) (regarding conclusory statements); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). *See* FED. R. CIV. P. 56(e); D. KAN. R. 56.1; 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 (2d ed.1994) (footnotes omitted).

*4. Summary*

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If sufficient evidence exists on

which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. *See Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

### B. *Pro Se* Standards

In addition to the standards applicable to all summary judgment motions, the court notes plaintiff's response to defendant's motion for summary judgment was prepared without the assistance of counsel. It has long been the rule that *pro se* pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir.1991); *Hill v. Corrections Corp. of America,* 14 F.Supp.2d 1235, 1237 (D.Kan.1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *See Hall,* 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the *pro se* litigant. *See id.* Plaintiff is expected to construct his own arguments or theories. *See id.; Hill,* 14 F.Supp.2d at 1237. Additionally, the fact that plaintiff is proceeding *pro se* does not excuse his noncompliance with every litigant's duty to comply with the fundamental rules of procedure. *See Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.1994) (citing *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) and noting that the *Nielsen* court cited "several cases for the principle that *pro se* parties must comply with the same procedural rules that govern all other litigants"); *Lemons v. Lewis,* 969 F.Supp. 657, 659 (D.Kan.1997) (citing *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir.

1994)). Quite simply, plaintiff's *pro se* status, in and of itself, does not prevent this court from granting summary judgment. *See, e.g., Baughman v. Saffle,* No. 00–6296, 2001 WL 1241329, at *1 (10th Cir. Oct.27, 2001) (granting summary judgment against a *pro se* plaintiff); *Woods v. Roberts,* No. 94–3159, 1995 WL 65457, at *2–3 (10th Cir. Feb.17, 1995) (affirming the grant of an unopposed motion for summary judgment).

### C. Facts [2]

The background facts to this case are not materially in dispute. Plaintiff, a black Muslim man from Sudan, has been an employee of defendant since 1995. His duties and job requirements are largely irrelevant to this case as his chief complaint is that he was subjected to a hostile work environment due to his race, religion, and nation of origin. As such, the following discussion notes only those instances relevant to plaintiff's claim that he was subjected to a hostile work environment. Before addressing these allegations, the court has also noted the uncontroverted procedural history of this case.

#### 1. Procedural History

The entirety of plaintiff's charges against defendant are really several smaller battles that make up a six year war. Because these prior events have implications upon the resolution of defendant's motion, the following recitation of the procedural history is relevant:

8. On or about November 1, 1996, Hammad filed complaints with the Kansas Human Rights Commission and the EEOC ("First EEOC Complaint") alleg-

---

2. All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. *See Hall v. United Parcel Serv.,* No. Civ. A. 992467–CM, 2000 WL 1114841, at

*5 (D.Kan. July 31, 2000) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). To the extent relevant, the factual disagreements between the parties will be noted.

ing that he was denied a lead position because of his race.

9. On or about June 30, 1998, the Kansas Human Rights Commission issued a no probable cause finding on Hammad's First EEOC Complaint.

10. On or about July 17, 1998, Hammad received the EEOC's Determination and Notice of Right to Sue (hereinafter "First Notice") relating to the Title VII race and national origin discrimination claims asserted in his First EEOC Complaint. The First Notice told Hammad that if he intended to sue his employer, he must do so within 90 days of receiving it.

11. On October 14, 1998, Hammad sued [defendant] and other individually named defendants ("First Lawsuit") in the United States District Court for the District of Kansas.

12. On October 5, 1999, Hammad moved to dismiss his claims against [defendant] without prejudice and those against the individual defendants with prejudice.

13. On October 8, 1999, the Court issued an order pursuant to the parties' stipulation dismissing the claims against [defendant] without prejudice and with prejudice as to the other defendants.

14. On November 8, 1999, Hammad filed another complaint with the EEOC ("Second EEOC Complaint") against [defendant], alleging discrimination, disparate treatment, retaliation, and hostile work environment based on race and national origin.

15. On December 2, 1999, Hammad amended his Second EEOC Complaint to add a claim for religious discrimination. Plaintiff described only one specific incident in the Amendment.

16. On April 6, 2000, Hammad sued [defendant] again ("Second Lawsuit") making the same allegations as in the First Lawsuit. Hammad filed the Second Lawsuit almost twenty-one months after receiving the First EEOC Notice.

17. On or about June 12, 2000, Hammad received an EEOC Determination and Notice of Right to Sue for his Second EEOC Complaint ("Second Notice") relating to claims of race, national origin, religious discrimination, retaliation, and hostile work environment.

18. On August 25, 2000, [defendant] moved to dismiss the Second Lawsuit.

19. On September 6, 2000, Hammad sued [defendant] for the third time ("September 6, 2000 Petition"), this time in Sedgwick County District Court. The factual allegations were nearly identical to the first two lawsuits, with the addition of: (1) race, religion, and national origin discrimination, retaliation, and hostile work environment pursuant to [state anti-discrimination laws]; (2) discrimination based on religion and hostile work environment based on race, religion, and national origin pursuant to Title VII; and (3) negligent supervision pursuant to Kansas law.

20. [Defendant] removed the September 6, 2000 Petition to the United States District Court for the District of Kansas and moved to dismiss. Said case was consolidated with the Second Lawsuit and Hammad responded to both motions.

21. On September 11, 2001, the Court issued a Memorandum and Order granting in part and denying in part [defendant's] Motion to Dismiss. In its order, the Court dismissed all of Hammad's claims against [defendant] except for the hostile work environment claim pursuant to Title VII.

Doc. 26, ¶¶ 8–20.[3]

### 2. Alleged Instances of Harassment

#### a. Defendant's Facts

Defendant moved for summary judgment, setting forth the following facts as uncontroverted:

1. Hammad has been employed by Learjet since on or about August 14, 1995.

2. Hammad is black and his national origin is Sudan.

3. Hammad alleges that on or about May 12, 1998, a co-worker called him a "nigger."

4. Hammad alleges that on or about July 7, 1998, he went to a restroom used by employees and supervisors at Learjet and discovered written on the wall the comments "Sami sucks d[ick]" and "Sami, your mom sucks camel d[ick]".[4]

5. Hammad alleges that on or about April 26, 1999, he discovered that someone had sprayed a large amount of chemical solvent all over his personal toolbox.

6. Hammad alleges that on or about May 19, 1999, his "Lead" said, "I am tired of you foreigners coming here to the U.S. and thinking that this country and company owe you something." Hammad further alleges that the "Lead" stated that ["the Lead"] resented a black roommate in college who received a full scholarship while ["the Lead"] had to pay his own way. Finally, Hammad alleges that the "Lead" asked twice, "If you sue how do you expect me to treat you?"

7. Hammad alleges that on or about October 15, 1999, a supervisor clocked him out while he was still physically working on the job, causing Hammad to lose two hours worth of pay.

Doc. 26, ¶¶ 1–7 (internal citations and footnote omitted). Plaintiff's memorandum in opposition, contrary to both the local rules and the Federal Rules of Civil Procedure, did not admit or deny the veracity of any of these statements. Doc. 31.

■ Because of plaintiff's failure to admit or deny the veracity of the facts set forth above by defendant, this court will deem these facts to be admitted for purposes of this motion. It is a well-established rule in this district that a litigant's failure to deny a fact set forth by a party moving for summary judgment results in that fact being admitted for purposes of resolving the moving party's motion. *See* D. KAN. R. 56.1(b); *Stegall v. Great American Ins. Co.*, 996 F.Supp. 1060, 1063 (D.Kan.1998) (relying upon D. KAN. R. 56.1 for the proposition that when the "non-moving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion"). This rule applies with no less force simply because plaintiff is proceeding *pro se*. *See Hall v. Martin*, 191 F.R.D. 617, 620–21 (D.Kan. 2000); *Hall v. Doering*, 185 F.R.D. 639, 645 (D.Kan.1999). Though this conclusion may seem harsh, these allegations are taken directly from the parties' prior stipulations.[5] Doc. 23, ¶ 8. In addition, some of these facts have been re-alleged by plaintiff. Doc. 31, ¶¶ 7 and 12. Accordingly, the court accepts these facts as true.[6]

---

**3.** Plaintiff concedes these allegations are "accurate." Doc. 31, p. 6.

**4.** Viewed in the light most favorable plaintiff, the court will construe this and all other references to camels to be a derogatory reference to plaintiff's nation of origin.

**5.** Fred W. Rausch, Jr., of Topeka, was plaintiff's counsel when these stipulations were made. On November 1, 2001, however, Rausch's motion to withdraw as counsel was granted. Doc. 28.

**6.** The court is aware of a line of Tenth Circuit cases that direct courts to allow a *pro se*

### b. Plaintiff's Facts

#### (1) Additional Identified Incidents

Plaintiff has set forth several additional instances that he claims supports his hostile work environment claim. These events are listed in chronological order and exclude the events already set forth by defendant.

1. Between May 1996 and October 1996, plaintiff alleges that his "lead," Mike Harrelson, "frequently said to him and co-worker Adil Mahgoub ("Mahgoub"), who is of the same ethnicity as [plaintiff], 'You foreigners need to go back to your own country.' and 'You foreigners need to leave my country.'" Doc. 31, ¶ 3.

2. On September 27, 1996, plaintiff claims that a supervisor called plaintiff and another black contractor "hoodlums" and that this implied plaintiff and the contractor were criminals because of the color of their skin. Doc. 31, ¶ 4.

3. Plaintiff alleges that on or about August 21, 1997, his manager refused plaintiff's request to leave work for two hours of weekly Friday prayer despite plaintiff's offer to make up those two hours at a time of the manager's choosing. Doc. 31, ¶ 5.

4. On March 23, 1998, while plaintiff was steering an aircraft out of defendant's building, a "lead" stated, in front of eight or more employees, including plaintiff, that an "American" driver was needed. Doc. 31, ¶ 6. Plaintiff avers this comment implied that non-American employees were inferior drivers. Doc. 31, ¶ 6.

5. In July 1998, a co-worker, Doug Markum, stated to other employees that the fast-food restaurants should send their unused food to Africa instead of throwing it away. Doc. 31, ¶ 8. Plaintiff contends this comment was intentionally made to provoke him. Doc. 31, ¶ 8.

6. Plaintiff alleges that on November 23, 1998, a white electrical "lead" stated that he was upset that his (the "lead's") daughter's black boyfriend had been convicted and sentenced to three years in prison for robbery. Doc. 31, ¶ 9. This lead allegedly told plaintiff that he was against interracial marriages and that each race "should stick to its own." Doc. 31, ¶ 9. Hammad challenged this statement

litigant an opportunity to correct a defect that may be "attributable to oversights likely the result of an untutored *pro se* litigant's ignorance of special pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir.1990); *see also Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir.1985) (stating district courts should "take care" to insure *pro se* litigants are provided with proper notice regarding the "complex procedural issues" attendant summary judgment proceedings). These cases, for many reasons, are inapplicable here. For example, the duty to admit or deny allegations of fact is an issue that is not "complex." To the contrary, it is a well-known and well-established procedural rule that is embodied in the case law as well as this district's rules. SEE D. KAN. R. 56.1(b); *Stegall v. Great American Ins. Co.*, 996 F.Supp. 1060, 1063 (D.Kan.1998). Further-

more, plaintiff, judging by his legal research and arguments against summary judgment, has established that he is not "untutored" in the most basic of procedural requirements. In similar situations, the Tenth Circuit has held that a district court is under no obligation to give plaintiff another opportunity to remedy a procedural defect because, as demonstrated above, no prejudice results from the admission of facts that have already been stipulated. *See Baughman v. Saffle*, No. 00–6296, 2001 WL 1241329, at *1 (10th Cir. Oct.27, 2001) (stating reversal was unnecessary because there was no indication that plaintiff was prejudiced); *Woods v. Roberts*, No. 94–3159, 1995 WL 65457, at *2–3 (10th Cir. Feb.17, 1995) (finding no abuse of discretion in light of the factors discussed in *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992)).

and the "lead" responded that " 'God separated the land and the water, and that's the way it should be.' " Doc. 31, ¶ 9.

7. On January 14, 1999, a co-worker, Brian Cotton, stated, in the presence of another co-worker, that plaintiff's "mom fucks camels." Doc. 31, ¶ 10. When plaintiff replied, "So what?," the other co-worker "laughed and said, 'You don't care if your mom fucks camels.' " Doc. 31, ¶ 10.

8. Plaintiff alleges that on January 28, 1999, Brian Cotton said to plaintiff, in the presence of a supervisor, " 'Sami, your mom sucks camel dick.' " Doc. 31, ¶ 11.

9. Plaintiff alleges that on May 21, 1999, he asked his supervisor why he could not have "the equal opportunity of whites to run engines," and that his supervisor's response was " 'because you are black.' " Doc. 31, ¶ 13.

10. On October 15, 1999, a co-worker asked plaintiff why he could not eat pork. Doc. 31, ¶ 14. When plaintiff responded he did not eat pork for religious reasons, another co-worker responded " 'Your freakin' religion[?]' " Doc. 31, ¶ 14.

11. Plaintiff alleges that he was listening to cultural music on October 27, 1999 and his "lead" turned down his music on three occasions and stated, in front of other co-workers, " 'Sami, why don't you play nice music?' " Doc. 31, ¶ 15.

12. On November 9, 1999, a co-worker made fun of "the holy month of Ramadan to insult and provoke" plaintiff. Doc. 31, ¶ 16. The co-worker "continued by stating to [plaintiff and another co-worker] that people in [Sudan] would be 'running crazy when the Red Cross aid gets to them.' " Doc. 31, ¶ 16.

13. On November 16, a co-worker said to plaintiff, after the Egyptian airliner tragedy, " 'What is this damn Muslim religion that supports suicide?' " Doc. 31, ¶ 17.

14. On January 12, 2001, an electrical "lead" told plaintiff that he could not take the Martin Luther King holiday off because he was a "foreigner." Doc. 31, ¶ 18.

15. On September 11, 2001, after Muslim terrorists crashed planes into the World Trade Center towers and the Pentagon, a co-worker told plaintiff that "Cops with lights flashing and sirens are coming" to get plaintiff so plaintiff "better run." Doc. 31, ¶ 19.

16. On October 2, 2001, a co-worker told plaintiff that "We are going to send some food to your country." Doc. 31, ¶ 20. Plaintiff claims this was intended to insult and provoke him due to his nationality.

17. On February 4, 2002, plaintiff discovered that "someone had attached tape to his personal tool box with a picture they had drawn with a black marker on the tape. The picture depicted a man of the 'Taliban' with a turban and a beard." Doc. 33.

(2) Admissibility of Additional Incidents

(a) General Rule: Exhaustion of Administrative Remedies

▮▮▮▮ In order to maintain a claim under Title VII, a plaintiff must first exhaust available administrative remedies. *See Welsch v. City of Shawnee*, No. 98–6243, 1999 WL 345597, at *2 & n. 2 (10th Cir. June 1, 1999) (Briscoe, J.) (stating exhaustion is a jurisdictional prerequisite in the Tenth Circuit). Specifically, a plaintiff must file a charge with the Equal Employment Opportunity Commission (EEOC) within 300 days after the allegedly unlawful employment activity. *See* 42

U.S.C. § 2000e–5(e)(1); *Edelman v. Lynchburg College*, 535 U.S. ——, 122 S.Ct. 1145, 1147, —— L.Ed.2d —— (2002); *Robbins v. Jefferson County Sch. Dist. R–1*, 186 F.3d 1253, 1257 (10th Cir.1999). Those events occurring 300 days prior to filing the EEOC complaint ordinarily are not actionable. Similarly, the events occurring after an EEOC complaint has been filed are not technically exhausted. Here, plaintiff filed the Second EEOC Complaint on November 8, 1999. Applying the 300 day rule to plaintiff's allegations, only those events occurring between January 22, 1999 and November 8, 1999 have been properly exhausted. Doc. 26, p. 11.

### (b) Exceptions: Continuing Violation and Related Acts

■ Recognizing that the general rule would exclude all but a few of the instances of alleged harassment, plaintiff raises two exceptions to the rule. Doc. 31, p. 12. Plaintiff first alleges that those events occurring prior to January 22, 1999 are actionable because they represent a continuing violation of his properly exhausted hostile work environment claim. With respect to the events occurring after he filed the Second EEOC Complaint, plaintiff contends those too are actionable because they are "reasonably related" to the events prompting his Second EEOC Complaint. Defendant, not surprisingly, has differing views. Doc. 26, p. 11; Doc. 32, p. 4.

### (i) Events Occurring Before January 22, 1999

■ Though events occurring prior to the 300 day mark are ordinarily not actionable, the Tenth Circuit has recognized the "continuing violation" doctrine as an exception to the general rule. *See Martin v. Nannie & The Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir.1993) (noting the Tenth Circuit first applied the doctrine in a Title VII case in *Allen v. Denver Pub.*

*Sch. Bd.*, 928 F.2d 978, 984 (10th Cir. 1991)). Under the continuing violation doctrine a "plaintiff may *recover* for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a 'continuing pattern of discrimination.' " *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 (10th Cir. 1999) (emphasis added); *Robbins*, 186 F.3d at 1257 (stating the conduct has to be sufficiently related to constitute a continuing pattern of discrimination). For the doctrine to apply, this court must consider

> several nonexclusive considerations relevant to the continuing violation question including (i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert [his] rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Martin*, 3 F.3d at 1415.

■ Courts often focus on the third factor—permanence—because the doctrine is premised upon "the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Martin*, 3 F.3d at 1415 n. 6; *see also Robbins*, 186 F.3d at 1258 (noting the importance of the permanence factor). In other words, the doctrine recognizes that some acts may not, in isolation, trigger plaintiff's attention that a violation has occurred. When the event(s) are viewed as a whole, however, the past events may constitute a continuing pattern of harassment. The doctrine recognizes that it would be inequitable to deny recovery when the prior events are truly part of

a pattern of activity that has continued into the 300 day period.

Applying the permanence factor and the rationale behind it to the incidents occurring before January 22, 1999, the court concludes that plaintiff's awareness that these events constituted unlawful employment acts was sufficiently triggered. Plaintiff's awareness that his rights may have been violated is evident because he filed his First EEOC Complaint in November of 1996 and the First Lawsuit in October of 1998. The charges in the First EEOC Complaint and the First Lawsuit are nearly identical to those set forth in the Second EEOC Complaint and in this case. Doc 26, ¶¶ 8, 11, 19. Because plaintiff cannot satisfy the permanence requirement, the continuing violation doctrine does not apply. *See Robbins,* 186 F.3d at 1258 ("Since [plaintiff] failed to satisfy the permanence requirement, she has not shown the existence of a continuing violation."). As such, plaintiff cannot recover for those incidents occurring before January 22, 1999.

 Though plaintiff cannot recover for the events occurring before January 22, 1999, this does not end the inquiry. In *Kline v. City of Kansas City,* 175 F.3d 660 (8th Cir.1999) *cert denied* 528 U.S. 1155, 120 S.Ct. 1160, 145 L.Ed.2d 1072 (2000), the Eighth Circuit held that events that are not part of a continuing violation are nonetheless admissible to provide relevant background to later discriminatory acts. *See Kline,* 175 F.3d at 666 (relying upon *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 167–68 (8th Cir. 1995) (en banc)). This rule is also applicable in the Tenth Circuit. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (stating a discriminatory act that is not timely may nonetheless constitute relevant background evidence of unlawful behavior); *Baty v. Willamette Indus., Inc.,* 172 F.3d

1232, 1248 (10th Cir.1999) (relying upon *Evans* and *Ashley* for the proposition that acts that do not constitute a continuing violation are still relevant as background evidence). Accordingly, the court finds that the events occurring before January 22, 1999, though not actionable, are relevant to determine whether plaintiff's work environment was hostile. *See Baty,* 172 F.3d at 1248 n. 10 (citing *Lockett v. West,* 914 F.Supp. 1229, 1234–35 (D.Md.1995) for the proposition that evidence of time-barred acts may be evidence of a hostile work environment).

### (ii) Events Occurring After November 8, 1999

 Plaintiff also contends that events subsequent to filing the Second EEOC Complaint should be admissible and actionable. Doc. 31, p. 12. In *Brown v. Hartshorne Public School District # 1,* 864 F.2d 680 (10th Cir.1988), the Tenth Circuit recognized that acts taken in retaliation for filing an EEOC Complaint that are "reasonably related" to the original complaint do not require the filing of an additional EEOC Complaint. *See Brown,* 864 F.2d at 682. While the "reasonably related" exception to the general rule of exhaustion often involves claims of subsequent retaliation, it is not clear that the Tenth Circuit standard is so limited. For example, the court, in *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794 (1997), noted that the *Brown* panel cited a Ninth Circuit opinion that permitted the inclusion of "any discrimination like or reasonably related to the allegations of the" original EEOC complaint. *Seymore,* 111 F.3d at 799. Neither party, however, has identified any authority that would indicate whether post-EEOC Complaint incidents are actionable under a hostile work environment theory. As such, the court will defer, for purposes of this memorandum and order, the decision of whether to per-

mit recovery for the events occurring after November 8, 1999.

It is only necessary, at this time, to conclude that these events are relevant for purposes of background. *Cf. O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1096 (10th Cir.1999) (indicating that in a hostile work environment analysis, the court, on a motion for summary judgment, should view all evidence "in context, not simply in its segmented parts"); *see also Nieto v. Kapoor*, 268 F.3d 1208, 1218 n. 7 (10th Cir.2001) (stating that a finding of a hostile work environment may even be based upon acts directed at others). Like the incidents occurring before January 22, 1999, the post-November 8, 1999 events will add background to plaintiff's allegation that he was subjected to a hostile work environment. Accordingly, the court will consider all instances occurring after the Second EEOC Complaint was filed. Doc. 31, ¶¶ 16–20; Doc. 33, Ex. B.

(c) Summary

 The court finds that the allegations of events occurring before January 22, 1999 and after November 8, 1999 are relevant to determining whether plaintiff has set forth a prima facie claim of a hostile work environment.[7] While the events occurring before January 22, 1999 are not actionable, no such finding has been made with respect to those incidents occurring after November 8, 1999. Because the court finds below that the totali-

ty of the evidence sufficiently raises a triable issue of fact on plaintiff's claim, a final decision on this matter will be taken under advisement pending additional arguments by the parties.[8]

## II. ANALYSIS

### A. Hostile Work Environment Legal Framework

 While Title VII does not explicitly mention hostile work environment as an unlawful employment activity, "it is well established [that] a victim of a racially[, religiously, or national origin-driven] hostile or abusive work environment may bring a cause of action pursuant to 42 U.S.C. § 2000e-2(a)(1)." *Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir.1994) (citing *Griffith v. Colorado, Div. of Youth Serv.*, 17 F.3d 1323 (10th Cir.1994) and *Hicks v. Gates Rubber Co.*, 928 F.2d 966 (10th Cir.1991)). A hostile work environment occurs when unwelcome conduct "unreasonably interferes with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment." *Smith v. Northwest Fin. Acceptance*, 129 F.3d 1408, 1412 (10th Cir.1997) (internal quotations and citations omitted). Such harassment is actionable under Title VII if the conduct is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive [or hostile] working environment." *Turnbull v. Topeka State Hosp.*, 255 F.3d

---

**7.** Defendant also objects to the consideration of these incidents because these factual allegations were not included in the pretrial order. Doc. 32, p. 3. While the pretrial order certainly would bar *claims* that are not contained in the pretrial order, *see Mandeville v. Quinstar*, No. 98–1408–MLB, 2000 WL 1375264, at *4 (D.Kan. Aug.29, 2000), defendant has failed to cite and the court is unaware of any authority that would prohibit the consideration of facts, though not contained in the pretrial order, that support a claim that is set forth in the pretrial order.

As such, the court holds that plaintiff's failure to include these facts in the pretrial order does not bar consideration of them by this court or a jury.

**8.** Specifically, the parties are invited to submit additional briefing limited to this issue. Defendant's initial brief is due by no later than April 19, 2002. Plaintiff's response shall be filed by no later than April 29, 2002. Defendant's reply, if any, shall be filed by no later than May 3, 2002.

1238, 1243 (10th Cir.2001) (internal quotations and citations omitted); *Braden v. Cargill, Inc.*, 176 F.Supp.2d 1103, 1112 (D.Kan.2001).

In order to state a prima facie case of hostile work environment and survive a defendant's motion for summary judgment, "it must be shown [9] that under the totality of the circumstances (1) the harassment was pervasive *or* severe enough to alter the terms, conditions, or privilege of employment ... and (2) the harassment was" based upon an animus towards plaintiff's race, religion, or country of origin. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994) (emphasis added). The "severe or pervasive" prong is disjunctive. *See Smith v. Northwest Fin. Acceptance*, 129 F.3d 1408, 1413 (10th Cir. 1997). In other words, plaintiff can survive summary judgment if he establishes either that the alleged discriminatory conduct was sufficiently "severe," *see Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243–44 (10th Cir.2001) (concluding that the single instance, a sexual assault, was sufficiently severe), or that it was sufficiently "pervasive," *see Smith v. Northwest Fin. Acceptance*, 129 F.3d 1408, 1415 (10th Cir.1997) (concluding that the conduct at issue was also sufficiently pervasive).[10]

With respect to the second prong of the prima facie test, it is important to note that general harassment, if not based upon race, religion, or nation of origin, is ordinarily not actionable. *See Bolden*, 43 F.3d at 551; *but see O'Shea v. Yellow Tech. Servs. Inc.*, 185 F.3d 1093, 1097 (10th Cir.1999). Title VII is not a civility code.[11] *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir.1998). The occasional utterance of epithets or distasteful comments that may engender offensive feelings in an employee

**9.** Recently, the Tenth Circuit noted that the term "show" or any derivation of that word, should not be read literally. *See Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1011 n. 7 (10th Cir.2002). The court stated that while many of its opinions utilized this and similar words that may lead some to believe plaintiff had a difficult burden, the term "show," when used at the summary judgment stage, requires only that a plaintiff "demonstrate" that a question of material fact exists. *See id.* (referring to this as a lesser burden than a literal interpretation).

**10.** The Supreme Court has held that the "severe" or "pervasive" inquiry contains both subjective and objective elements. *See Smith v. Northwest Fin. Acceptance*, 129 F.3d 1408, 1413 (10th Cir.1997) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Not only does plaintiff have to show that he personally perceived the environment to be hostile (subjective), plaintiff must also produce evidence that a "reasonable person" would also have found the environment hostile (objective). *See id.* For purposes of this memorandum, the court finds that plaintiff has sufficiently set forth evidence of a subjective belief that the environment was hostile. Therefore, the following analysis will only address whether there is evidence that a reasonable person would find the harassment to be severe or pervasive.

**11.** The Tenth Circuit, in *Gross v. Burggraf Construction Co.*, citing a case from the Eastern District of Michigan, noted that Title VII was not meant, nor, even if it were so intended, could it make a "magical transformation" of the sometimes "rough hewn and vulgar" actions of American workers. *See Gross*, 53 F.3d at 1531, 1538 (10th Cir.1995) (citing *Rabidue v. Osceola Refining Co.*, 584 F.Supp. 419, 430 (E.D.Mich.1984)). Rather, the court noted that it "must never be forgotten that Title VII is the federal court mainstay in the struggle for *equal* employment opportunity" for employees. *Gross*, 53 F.3d at 1537 (citing *Rabidue*, 584 F.Supp. at 430 (emphasis added)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment.").

does not sufficiently affect the conditions of employment to implicate Title VII. *See Arzate v. City of Topeka,* 884 F.Supp. 1494, 1502 (D.Kan.1995) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Similarly, when analyzing a plaintiff's case, the court must keep in mind that conduct or speech occurring in a factory environment is measured by different standards than conduct that occurs in a more refined settings. *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1538 (10th Cir.1995) ("Accordingly, we must evaluate Gross' claim of gender discrimination in the context of a blue collar environment where crude language is commonly used by male and female employees. Speech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments.").

## B. Application of Incidents to Legal Framework

### 1. Application

 Applying the foregoing framework to the numerous instances of alleged harassment discussed in more detail below, the court concludes that plaintiff has stated a prima facie case of hostile work environment harassment. For example, the court finds that plaintiff has set forth evidence that at least creates a question of fact as to whether the harassment was "severe" or "pervasive," the sheer number of overtly hostile comments regarding plaintiff's race, religion, and nation of origin may permit a jury to find the harassment was pervasive, and the facially neutral incidents, when viewed in light of the openly hostile comments adds to the "totality" of the allegedly hostile environment. As such, defendant's motion is denied.

### a. Whether The Harassment Was "Severe" or "Persuasive" Is A Question Of Fact

 The Tenth Circuit has recently noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is ' "quintessentially a question of fact." ' " *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1098 (10th Cir.1999). While the Tenth Circuit and courts within this district have granted a motion for summary judgment on hostile work environment claims, *see Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1547 (10th Cir.1995); *Braden v. Cargill, Inc.,* 176 F.Supp.2d 1103, 1113 (D.Kan.2001), these cases appear to be the exception, not the rule, *see, e.g., Smith v. Northwest Fin. Acceptance,* 129 F.3d 1408, 1415 (10th Cir.1997); *Wright–Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1269 (10th Cir.1998). Thus, when allegations are made which, if believed by a jury, may constitute a severe and hostile work environment, this court cannot enter summary judgment against a plaintiff.

Viewing plaintiff's allegations in the light most favorable to him and keeping in mind the aforementioned tendency, the court must deny defendant's motion. Plaintiff has alleged at least fifteen different instances where he has been, at the very least, confronted with derogatory comments about his race, religion, and/or nation of origin. When faced with these identified instances, a reasonable jury may find that this harassment was objectively severe and/or pervasive so as to alter the terms and conditions of his employment. While there is little, if any, evidence that these incidents "unreasonably" interfered with plaintiff's work performance, the ultimate decision of whether this offensive conduct created a hostile work environment must be made by the jury, not this court.

Defendant's reliance upon the "blue-collar" nature of plaintiff's employment, as recognized by the Tenth Circuit in *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531 (10th Cir.1995) and *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir.1994), does not dictate a different result. Doc. 26., p. 8. The courts in both *Gross* and *Bolden* affirmed the district court's grant of summary judgment in favor of the defendant due in part to the "blue collar" work environment. *See Gross*, 53 F.3d at 1547; *Bolden*, 43 F.3d at 551–52. Nonetheless, plaintiff's allegations, when viewed in the light most favorable to plaintiff, make these cases factually distinguishable.

For example, the court in *Bolden* noted that the plaintiff did not show he was "singled out for abuse and has not shown the ridicule he faced stemmed from racial animus." *Bolden*, 43 F.3d at 551. Unlike in *Bolden*, plaintiff has set forth facts indicating that he was singled out because of his race, religion, and national origin. In *Gross*, the plaintiff allegedly engaged in the rough and sometimes vulgar discussions, thus minimizing any sensitivity she claimed from the identified episodes committed by others. *See Gross*, 53 F.3d at 1538. Unlike the plaintiff in *Gross*, there is no evidence that plaintiff contributed to the environment of animus towards employees based upon race, religion, and/or place of birth. These important factual distinctions do not permit the court to follow either *Gross* or *Bolden* and grant defendant's motion. *See, e.g., Smith v. Northwest Fin. Acceptance*, 129 F.3d 1408, 1414 (10th Cir.1997) (distinguishing *Gross* upon its facts and upholding a jury verdict finding a hostile work environment existed). The "blue collar" argument may be persuasive to a jury but it is not dispositive at this stage in light of the specific allegations set forth by plaintiff and the lens through which this court must view those allegations.

b. The Frequency Of The Allegations May Permit A Jury To Find The Hostile Harassment Was Pervasive

 Though the "pervasive" inquiry is not a "counting measure," *Nieto v. Kapoor*, 268 F.3d 1208, 1219 n. 8 (10th Cir.2001), the number of acts that plaintiff has set forth leads this court to the conclusion that a jury may find the harassment was sufficiently pervasive to affect the terms and conditions of plaintiff's employment. Plaintiff has identified a number of incidents where a wide array of co-workers and supervisory employees allegedly made comments that were based upon plaintiff's race, religion, and nation of origin. For example, plaintiff has identified four instances of overt racial animus, Doc 26, ¶ 3, Doc. 31, ¶¶ 2, 9, and 13, five instances of religious intolerance, Doc. 31, ¶¶ 5, 14, 15, 16, and 17, and ten instances of harassment based upon plaintiff's nation of origin, Doc. 26, ¶¶ 4 and 6; Doc. 31, ¶¶ 1, 6, 8, 10, 18, 19, and 20; Doc. 33. These incidents, though occurring over a six-year period, are frequent enough that a jury may find "pervasive" harassment based upon the identified invidious factors.

c. Facially Neutral Acts, In Light Of Hostile Behavior, May Also Permit A Jury To Conclude The Environment Was Hostile

 Finally, the court concludes that the facially neutral acts of harassment may also convince a jury that plaintiff was subjected to a hostile work environment. In this circuit, not only may the court consider the overtly discriminatory remarks but also those comments and actions that lack the apparent hallmark of discrimination. *See O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir.1999) (relying upon *Bolden* for the proposition that, as part of the totality of circumstances, the court must also consider facially neutral

acts or comments). These neutral acts may be considered if, coupled with the overtly hostile behavior, they produce an inference of unlawful harassment. *See id.* (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir.1999)).

Plaintiff has identified at least three examples of facially neutral harassment: the spraying of solvent on plaintiff's toolbox, Doc. 26, ¶ 5; the supervisor clocking plaintiff out while he was still working, Doc. 26, ¶ 7; and the graffiti on the bathroom wall claiming that plaintiff "sucks d[ick]," Doc. 26, ¶ 4. These episodes may be mere workplace shenanigans that are common to defendant's factory but, taken in the light most favorable to plaintiff, may also be acts of harassment based upon plaintiff's race, religion, and/or country of origin. As such, the court concludes that these too may be considered by a jury to be signs of a hostile work environment.

### 2. *Summary*

Determining when a hostile work environment exists is more of an inexact art than a finite science. *Cf. Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir.2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) ("There is no 'mathematically precise test' for determining whether the conduct is sufficiently severe or pervasive."). Applying the foregoing test to the facts as set forth by plaintiff, the court concludes that a reasonable jury could find that plaintiff was subjected to a work environment with severe or pervasive harassment that was based upon his race, religion, and/or nation of origin. Whether the jury ultimately believes this to be the case is, however, another question.

### III. *CONCLUSION*

For the aforementioned reasons, defendant's motion for summary judgment is DENIED.

A motion for reconsideration of this order is neither expected nor encouraged. Any such motion shall not exceed 5 double-spaced pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed. Failure to adhere to these limitations will operate as a waiver to reconsideration.

IT IS SO ORDERED.